UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| MOHAMMAD MORADI,<br><br>　　　　Plaintiff,<br><br>v.<br><br>MARK A. MORGAN, Acting Commissioner, U.S. Customs and Border Protection; CHAD WOLF, Acting Homeland Security Secretary; MICHAEL S. DENNING, Director, Field Operations, Boston Field Office, U.S. Customs and Border Protection; and LINDA K. BROWN, Port Director, Boston Area, U.S. Customs and Border Protection,<br><br>　　　　Defendants. | Civil Action No. 20-10204-DJC |

**DECLARATION OF PATRICK HOWARD**

I, Patrick A. Howard, declare the following to be true and correct:

1.　　　I am a Branch Chief within the Freedom of Information Act Division (FOIA Division) at U.S. Customs and Border Protection (CBP). I have been a Branch Chief in the FOIA Division since February 8, 2015. In this capacity, I oversee a staff of Government Information Specialists, the processing of requests for records submitted to CBP pursuant to the FOIA, 5 U.S.C. § 552, the Privacy Act (PA), 5 U.S.C. § 552a, and other activities conducted pursuant to applicable records access provisions.

2.　　　I am familiar with CBP's procedures for responding to FOIA requests. I provide technical and administrative supervision and direction to a group of FOIA specialists in processing FOIA requests and assist with FOIA/PA litigation matters, and I am personally

familiar with the processing of FOIA/PA responses, including, at times, by directly reviewing for adequacy and compliance to Federal laws and regulations.

3.    I am familiar with the FOIA request submitted to CBP on behalf of Mr. Mohammed Moradi (Plaintiff) on November 8, 2019.

4.    I am also familiar with the supplemental FOIA request submitted to CBP on behalf of Plaintiff on March 26, 2020.

5.    The statements I make in this declaration are based upon my personal knowledge, which includes knowledge acquired through information furnished to me in the course of my official duties and Agency files that I personally reviewed in the course of my official duties.

6.    The purpose of this Declaration is to describe CBP's handling of Plaintiff's FOIA requests.  This Declaration summarizes the relevant facts and correspondence regarding Plaintiff's FOIA requests, explains the searches CBP conducted in responding to the requests, and details CBP's withholdings of responsive information pursuant to FOIA exemptions in accordance with the requirements of *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973).

I.    **Background**

7.    CBP is a component law enforcement agency of the U.S. Department of Homeland Security (DHS) with statutory responsibility for safeguarding America's borders and facilitating legitimate trade and travel.  CBP is comprised of over 60,000 employees charged with enforcing over 400 Federal statutes on behalf of over 40 different Federal agencies.  CBP's mission is to protect the borders of the United States against terrorists and instruments of terror, enforce the customs and immigration laws of the United States, and foster our Nation's economy by facilitating lawful international trade and travel.  This mission includes the detection and prevention of unlawful entry into the United States.  The creation and implementation of effective law enforcement policies and procedures is paramount to achieving this mission.  The records at

issue in this case are directly related to CBP's law enforcement activities and are used for border security and enforcement purposes.

8.    The Office of Field Operations (OFO) is a component within CBP and is responsible for enforcing numerous Federal statutes and regulations, including those related to customs, immigration, agriculture, and public health and safety, at our nation's 328 ports of entry and 15 preclearance locations.  OFO is comprised of nearly 30,000 employees.

9.    On October 6, 2019, Plaintiff arrived at Logan International Airport in Boston, Massachusetts and applied for entry into the U.S.  After interviewing Plaintiff and reviewing relevant information, CBP officers determined Plaintiff was inadmissible to the U.S.  As a result, CBP issued Plaintiff an expedited removal order pursuant to the Immigration and Nationality Act (INA) §§ 212(a)(6)(C)(i) and 212(a)(7)(A)(i)(I).  The INA is codified at Title 8 of the U.S. Code and the corresponding cites for Plaintiff's expedited removal order are 8 U.S.C. §§ 1182(a)(6)(C)(i) and 1182(a)(7)(A)(i)(I).

10.    On November 5, 2019, Plaintiff submitted a request to vacate the expedited removal order issued to him on October 6, 2019.  Pursuant to the INA and implementing regulations, there is no prescribed mechanism for CBP to reopen, reconsider, or vacate an expedited removal order. In certain cases, CBP can, solely in its own discretion, vacate an expedited removal where information comes to its attention that it believes warrants such action.

11.    By letter dated December 17, 2019, the Director, Field Operations, Boston Field Office upheld the expedited removal order, however, removed reference to the INA § 212(a)(6)(C)(i) charge, therein.

## II.    Plaintiff's November 8, 2019 FOIA Request

12.    On November 8, 2019, Plaintiff filed a FOIA request using CBP's online FOIA portal.  As part of the process to submit a FOIA request, the CBP FOIA Division instructs all

requesters to provide a clear and detailed description of the records sought.  The CBP FOIA

Division also advises that the more details a requester provides in the request, the better chance

that the requesters will receive the information they are seeking.

13.    Plaintiff's request sought the following records:

1.) All records relating to Plaintiff's entries into the U.S. on or about April 28, 2019; August 17, 2019; and September 17, 2019;

2.) All records—whether written, electronic, or digitally recorded via audio or videotape—relating to the October 6, 2019 questioning and expedited removal of Plaintiff at CBP Logan Airport;

3.) Any and all records relating to the investigation of Plaintiff; including, but not limited to, materials relied upon in determination to revoke visa and order expedited removal.

14.    Plaintiff's request did not contain a definition section or define the term "record" to include email or electronic communications, which is the normal course for requests that seek that type of record.  Furthermore, Plaintiff's request did not include specific search terms to indicate that a search of email or electronic communications was necessary to respond to this request.

15.    On November 21, 2019, CBP acknowledged receipt of the FOIA request and notified Plaintiff that due to CBP's increased FOIA caseload, the average time to process a request related to "travel/border incidents" is a minimum of 3-6 months.  At the time, CBP was experiencing a backlog in processing the increasing caseload and required more time to process requests.

16.    On February 3, 2020, Plaintiff filed the instant FOIA complaint in U.S. District Court for the District of Massachusetts.

17. In response to Plaintiff's request, CBP produced thirty (30) pages of responsive records to Plaintiff on March 24, 2020. CBP produced these documents well within the period stated in CBP's acknowledgement of Plaintiff's request.

### III. Plaintiff's March 26, 2020 FOIA Request

18. On March 26, 2020, two (2) days after Plaintiff received CBP's response to the November 8, 2019 FOIA request, Plaintiff submitted a supplemental FOIA request to CBP.

19. Plaintiff's supplemental request served to clarify Plaintiff's November 8, 2019 request. Plaintiff re-stated request number two of his earlier request, adding that the request "encompasses records concerning [Plaintiff's] motion to rescind the expedited removal order." The supplemental request provided no further clarification or information relating to the sufficiency of the documents received in response to Plaintiff's original request. The supplemental request did not contain a definition section or specify "record" to include email or electronic communications, which is the normal course for requests that seek that type of record. Furthermore, the supplemental request did not include specific search terms to indicate that a search of email or electronic communications was necessary to respond to the request.

20. As the case was in litigation and subject to court ordered timelines, CBP did not send Plaintiff a formal acknowledgement of receipt of the supplemental FOIA request.

21. In response to Plaintiff's March 26, 2020 supplemental FOIA request, CBP released thirty-nine (39) pages of responsive records to Plaintiff on May 8, 2020.

### IV. CBP's Search for Responsive Records

22. CBP's FOIA Division is responsible for handling all FOIA requests received by the Agency. Broadly, FOIA Division processing includes initial intake at the headquarters level in Washington, D.C. and identifying, gathering, reviewing and redacting responsive records for production. First, the FOIA Division determines which CBP offices and/or databases are likely to

contain records responsive to the request.  Assessments of where responsive records are likely to be contained is based on a review of the content of the request, the nature of the records sought, the FOIA Division's familiarity with the types and locations of the records at issue, and discussions with knowledgeable Agency personnel.  The FOIA Division will then search CBP databases and/or request identified CBP offices to gather any/all potentially responsive records.  The FOIA Division reviews all gathered records for responsiveness, redacts the documents as appropriate, reviews redaction marks, and obtains final authorization for release prior to production.  The FOIA Division will also consult with CBP personnel, other components within DHS, or agencies outside of DHS, as necessary, prior to release.  CBP does not usually include documents located in the public domain, readily accessible to the requester, and/or known to be in the possession of the requester with its production.  FOIA may refer the requester to a public domain containing requested documents, if necessary.

23.    Pursuant to Federal Register Vol. 81, No. 225, Freedom of Information Act Regulations, § 5.3(b) (Nov. 22, 2016):

> [r]equestors must describe the records sought in sufficient detail to enable DHS personnel to locate them with a reasonable amount of effort.  A reasonable description contains sufficient information to permit an organized, non-random search for the record based on the component's filing arrangements and existing retrieval systems. . . . In general, requesters should include as much detail as possible about the specific records or the types of records that they are seeking.

24.    Plaintiff's November 8, 2019 FOIA request sought records relating to Plaintiff's entries into the United States on specific dates and records relating to the October 6, 2019 questioning and expedited removal order.  Pursuant to the process described above, the FOIA Division searched and retrieved responsive records from the appropriate CBP databases.  The FOIA Division also referred the request to the Boston Field Office to conduct a search for potentially responsive records related to the October 6, 2019 questioning and expedited removal of the Plaintiff.  The Boston Field Office verified that no video or audio files existed relating to

the October 6, 2019 questioning and provided the information relied upon in issuing the expedited removal order.

25.    As noted in Paragraph 14 above, Plaintiff's request did not contain a definition section or define the term "record" to include email or electronic communications, nor did it include specific search terms to indicate that a search of email or electronic communications was necessary to respond to the request.  Furthermore, considering the requirement of specificity for FOIA requests, requesters seeking email or other forms of communication records usually specify as such clearly in the request.  Lastly, traveler requests for information pertaining to themselves on specific dates do not usually necessitate the search of email communications to obtain responsive records.  For this reason, the FOIA Division did not request that CBP's Office of Information Technology (OIT) conduct an email search related to this case.  In conducting an email search, OIT retrieves email messages sent or received by CBP custodians.  This process can be lengthy, and requires a date range and keywords to search.

26.    Plaintiff's March 26, 2020 supplemental FOIA request clarified that Plaintiff also sought records relating to Plaintiff's request to vacate the expedited removal order.  On March 27, 2020, pursuant to the process described in Paragraph 22 above, the FOIA Division referred the request to the Boston Field Office to search for potentially responsive records.  The Boston Field Office provided responsive records to the FOIA Division for processing.  For the reasons stated above, there was no request placed for CBP OIT to conduct an email search related to Plaintiff's supplemental FOIA request.

27.    Based on my experience in the FOIA Division, discussions with knowledgeable Agency personnel, understanding of the scope of Plaintiff's FOIA requests, and the information gathered, I aver that the searches described herein were reasonably calculated to uncover all

potentially responsive records and that all files likely to contain responsive documents were searched.

### V.    CBP's Withholdings Pursuant to FOIA Exemptions

28.    CBP produced a total of sixty-nine (69) pages of non-exempt records, or non-exempt portions of records to Plaintiff in response to his FOIA requests.  CBP withheld material pursuant to FOIA Exemptions (b)(5), (b)(6), (b)(7)(C), and (b)(7)(E).  These withholdings are described in detail below.

#### a. *5 U.S.C. § 552(b)(5): Deliberative Materials*

29.    Exemption (b)(5) under the FOIA exempts from mandatory disclosure matters that are "inter-agency and intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency."  Exemption (b)(5) encompasses both statutory privileges and those commonly recognized by case law.  The privileges incorporated into this exemption pertain to an Agency's decision-making process (*i.e.*, the deliberative-process privilege).

30.    CBP invoked Exemption (b)(5) based on the deliberative-process privilege in instances where records contained pre-decisional recommendations.  Specifically, the records redacted under Exemption (b)(5) were statements reflecting internal Agency deliberations pertaining to potential enforcement actions.  The purpose of the deliberative-process privilege is to (1) encourage open, frank discussions on matters of policy between subordinates and superiors; (2) protect against premature disclosure of proposed policies before they are actually adopted; and (3) protect against public confusion that might result from disclosure of reasons and rationales that were not in fact ultimately the grounds for an Agency's action.  The privilege protects the decision-making processes of government agencies and the integrity of the deliberative process itself where the exposure of that process would result in harm.

31.    Release of the materials withheld under Exemption (b)(5), which are pre-decisional, could reasonably be expected to have a chilling effect on the open and frank expression of ideas, recommendations, and opinions that occurs when Agency officials are discussing and crafting guidance on a time-sensitive issue.  Disclosure of this information would also impede the ability of responsible government officials to formulate and carry out executive branch programs by inhibiting candid internal discussion and the expression of recommendations and judgments regarding a preferred course of action.

32.    As identified in the attached *Vaughn* document index, CBP has applied Exemption (b)(5) to portions of two pages of records released to Plaintiff.

### b. 5 U.S.C. § 552(b)(6) and 5 U.S.C. § 552(b)(7)(C): Personally Identifiable Information (PII)

33.    Exemption (b)(6) under the FOIA exempts from mandatory disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  This protection is afforded to information that would infringe on the personal privacy of individuals about whom it pertains.  The determination whether disclosure "would constitute a clearly unwarranted invasion of personal privacy" involves a balancing of the public's right to know the information against the individual's right to privacy.

34.    Exemption (b)(7)(C) under the FOIA exempts from mandatory disclosure "records or information compiled for law enforcement purposes" the disclosure of which "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  This exemption protects, among other information, the identity of law enforcement personnel and third parties referenced in files compiled for law enforcement purposes.  The exemption is intended to protect law enforcement personnel from harassment and annoyance in their private lives due to the conduct of their official duties, which could conceivably result from public disclosure of their identity.  The

exemption is also intended to protect third parties, whose identities are revealed in law enforcement files, from comment, speculation and stigmatizing connotation associated with being identified in a law enforcement record.  In asserting this exemption, each piece of information was scrutinized to determine the nature and strength of any individual's privacy interest.  In withholding the information, the individual's privacy interest is balanced against the public's interest in disclosure.  In each instance, it was determined that whatever public interest there might be, if any, in knowing the personal information of the individuals identified in the relevant records did not outweigh the privacy interests of said individuals.

35.    CBP applied Exemptions (b)(6) and (b)(7)(C) in tandem, such that information protected by one is also protected by the other.  CBP applied Exemptions (b)(6) and (b)(7)(C) to personally identifiable information of third parties that were identified in CBP's investigation of Plaintiff, such as their names and phone numbers, contained in CBP records.  CBP also applied Exemptions (b)(6) and (b)(7)(C) to personally identifiable information of certain CBP employees, such as their names, phones numbers, and other identifying information contained in CBP records.  CBP did not, however, apply Exemptions (b)(6) and (b)(7)(C) as a categorical matter to all such information.  For example, CBP released names of senior officials whose identities are widely known among the public.

36.    The individual's right to have his or her identity withheld from disclosure clearly outweighs the public interest, if any, in knowing the withheld information described in the paragraph above.  First, the identification of CBP officials in association with the performance of their duties in an operational context risks unwarranted attribution and attention to the employee beyond the confines of their job and into their personal life, and disclosing the identities of these specific individuals would not meaningfully shed light on how the government performs its duties.  To reveal the withheld information would constitute a clearly unwarranted invasion of personal

privacy.  With regard to third parties, they likewise have a privacy interest to be free of unwarranted attention, and releasing the identities of third parties merely mentioned in Agency records, without their authorization, would violate their legitimate privacy interests.  Whatever minimal interest the public could have in knowing the personally identifiable information of third parties does not outweigh the personal privacy interests of these third parties.  Revealing the withheld information would constitute a clearly unwarranted invasion of personal privacy.

37.     CBP has applied Exemptions (b)(6) and (b)(7)(C) in numerous instances across the sets of records it has released to Plaintiff.

*c. 5 U.S.C. § 552(b)(7)(E): Records or Information Compiled for Law Enforcement Purposes*

38.     Exemption (b)(7)(E) under the FOIA exempts from mandatory disclosure "records or information compiled for law enforcement purposes" that, if released, "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  CBP is constrained in describing the techniques, procedures, and guidelines by its Exemption (b)(7)(E) withholdings, so as to avoid revealing information CBP seeks to protect, which is not generally known to the public.  The discussion below thus aims to fairly represent the Exemption (b)(7)(E) withholdings but does not purport to be an all-inclusive rendering of all withheld information.

39.     To be eligible for withholding under Exemption (b)(7)(E), records or information must be compiled for law enforcement purposes.  As articulated in paragraph seven above, the records at issue were compiled for law enforcement purposes in that the information is collected and used by CBP in its mission to secure the borders and facilitate legitimate travel to the United States.

40.    CBP invoked Exemption (b)(7)(E) to withhold the following types of information compiled for law enforcement purposes:

i.    ***Internal codes, case tracking numbers, and names of databases*** - CBP withheld under Exemption (b)(7)(E) internal codes, case tracking numbers, and the names of databases which the Agency considers law enforcement sensitive information.  Disclosure of such information would enable an individual knowledgeable in CBP databases to improperly access the system, facilitate navigation or movement through the system, allow manipulation or deletion of data and/or interfere with enforcement proceedings.

ii.    ***Law Enforcement Techniques, Procedures and Methods, and Information Compiled for Law Enforcement and Investigative Purposes*** – CBP withheld under Exemption (b)(7)(E) information relating to law enforcement techniques, procedures and methods, and information compiled for law enforcement and investigation purposes.  Disclosure of such information would be detrimental to both CBP and the law enforcement community, and enable individuals to alter patterns of conduct, adopt new methods of operation, relocate, change associations, and effectuate other countermeasures, thereby corrupting the integrity of ongoing investigations. This information could also be used by individuals attempting to circumvent or violate immigration and customs laws by aiding them in taking steps to alter behavior, conceal criminal activity, predict the Agency's investigative strategy, and otherwise counter Agency enforcement operations.  Finally,

disclosure of this information could also reveal internal Agency investigative practices.

41.    As identified in the attached Vaughn document index, CBP has applied Exemption (b)(7)(E) in numerous instances across many of the produced documents.

42.    Finally, CBP has applied a redaction to one document produced to Plaintiff marked as non-responsive.  This redacted section contains information related to a CBP encounter involving an individual unrelated to Plaintiff's encounters and is, thus, unresponsive to Plaintiff's FOIA requests.  In addition to being unresponsive, the redacted material is protected from disclosure as it also contains law enforcement sensitive information.


I declare under penalty of perjury that the forgoing is true and correct to the best of my knowledge.


Executed on this day of August 28, 2020


*Patrick Howard*

Patrick A. Howard