## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| | ) | |
| | ) | |
| **MOHAMMAD MORADI,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| | ) | |
| **MARK A. MORGAN, Acting Commissioner,** | ) | |
| **U.S. Customs and Border Protection; CHAD** | ) | |
| **WOLF, Acting Homeland Security Secretary** | ) | **Civil Action No. 20-cv-10204** |
| **MICHAEL S. DENNING, Director, Field** | ) | |
| **Operations, Boston Field Office, U.S. Customs** | ) | |
| **and Border Protection; LINDA K. BROWN,** | ) | |
| **Port Director, Boston Area, U.S. Customs** | ) | |
| **and Border Protection,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| | ) | |

## <u>MEMORANDUM AND ORDER</u>

**CASPER, J.**                                                                                       **March 22, 2021**

### I.    Introduction

Plaintiff Mohammad Moradi ("Moradi") has filed this lawsuit against Defendants Mark A.

Morgan, Acting Commissioner of U.S. Customs and Border Protection ("CBP") ("Morgan");

Chad Wolf, Acting Homeland Security Secretary ("Wolf"); Michael S. Denning, Director of Field

Operations, Boston Field Office, CBP ("Denning"); and Linda K. Brown, Port Director at CBP,

Boston Area ("Brown") (collectively, "Defendants"), alleging violations of the Freedom of

Information Act ("FOIA"), 5 U.S.C. § 552.  D. 1.  Moradi requests the Court compel Defendants

to disclose records in CBP's custody relating to Moradi's three admissions into the United States

in 2019 and his expedited removal order, issued on October 6, 2019.  D. 1 at 1.  Defendants have

moved for summary judgment, D. 28, and Moradi has filed a cross-motion for summary judgment, D. 33.  Moradi has also moved to strike a supplemental declaration filed by Defendants after the summary judgment filings were complete.  D. 45.  For the reasons stated below, the Court DENIES Moradi's motion to strike, D. 45, ALLOWS in part and DENIES in part Defendants' motion for summary judgment without prejudice, D. 28, and DENIES Moradi's cross-motion for summary judgment without prejudice, D. 33.

## II.     Standard of Review

### A.     <u>Motions for Summary Judgment</u>

The Court grants summary judgment where there is no genuine dispute as to any material fact and the undisputed facts demonstrate that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  "A fact is material if it carries with it the potential to affect the outcome of the suit under applicable law."  <u>Santiago–Ramos v. Centennial P.R. Wireless Corp.</u>, 217 F.3d 46, 52 (1st Cir. 2000).  The movant bears the burden of demonstrating the absence of a genuine issue of material fact.  <u>Carmona v. Toledo</u>, 215 F.3d 124, 132 (1st Cir. 2000); <u>see</u> <u>Celotex v. Catrett</u>, 477 U.S. 317, 323 (1986).  If the movant meets its burden, the non-moving party may not rest on the allegations or denials in its pleadings, <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986), but must come forward with specific admissible facts showing that there is a genuine issue for trial.  <u>Borges ex rel. S.M.B.W. v. Serrano–Isern</u>, 605 F.3d 1, 5 (1st Cir. 2010). The Court "view[s] the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor."  <u>Noonan v. Staples, Inc.</u>, 556 F.3d 20, 25 (1st Cir. 2009).

"FOIA cases are typically decided on motions for summary judgment."  <u>Am. Civil Liberties Union of Massachusetts, Inc. v. U.S. Immigration & Customs Enf't</u>, 448 F. Supp. 3d 27, 35 (D. Mass. 2020) (quoting <u>Am. Civil Liberties Union Found., Inc. v. United States Dep't of Educ.</u>, 320 F. Supp. 3d 270, 276 (D. Mass. 2018)).  Summary judgment is warranted for a

defendant in a FOIA case "when the agency proves that it has fully discharged its obligations under the FOIA after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester." Crooker v. Tax Div. of U.S. Dep't of Justice, No. 94-CV-30129-MAP, 1995 WL 783236, at *7 (D. Mass. Nov. 17, 1995) (internal quotations omitted) (quoting Gordon v. Thornberg, 790 F. Supp. 374, 378 (D.R.I. 1992)). An agency discharges its burden when it "proves that each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the FOIA's inspection requirements." Id. (internal quotation marks omitted) (quoting Gillen v. IRS, 980 F.2d 819, 821 (1st Cir. 1992)). Summary judgment in FOIA cases "may be granted solely on the basis of agency affidavits." Id. at *10 (citing Gardels v. Central Intelligence Agency, 689 F.2d 1100, 1104-5 (D.C. Cir. 1982)); Hemenway v. Hughes, 601 F. Supp. 1002, 1004 (D.D.C. 1985)).

## III.    Factual Background

The following facts are undisputed unless indicated otherwise.[1]  CBP, an agency of the U.S. Department of Homeland Security ("DHS"), detects and prevents unlawful entry into the United States.  D. 29 ¶¶ 1-2; D. 35 ¶¶ 1-2.  The Office of Field Operations ("OFO") is the component of CBP responsible for enforcing federal statutes and regulations, including those related to customs and immigration, at U.S. ports of entry.  D. 29 ¶ 3; D. 35 ¶ 3.  On October 6, 2019, Moradi arrived at Logan International Airport in Boston, Massachusetts and applied for entry into the United States.  D. 29 ¶ 4; D. 35 ¶ 4.  Following an interview with Moradi, CBP

---

[1] Moradi cross-moved for summary judgment, D. 33, but did not submit a statement of material facts.  D. 37 at 2; see Bonbon v. Elite Guardian Sols., LLC, No. 17-cv-10275-ADB, 2019 WL 3290993, at *1 (D. Mass. July 22, 2019) (denying cross-motion for summary judgment where party failed to submit a statement of material facts upon which the Court could adjudicate summary judgment).  The Court, however, considers the undisputed facts as asserted in CBP's statement of material facts, D. 29 at 3-8, and Moradi's response to CBP's statement of material facts, D. 35.

officers determined Moradi was inadmissible and issued Moradi an expedited removal order pursuant to the Immigration and Nationality Act ("INA").  Id.

On November 5, 2019, Moradi submitted a request to vacate the expedited removal order. D. 29 ¶ 5; D. 35 ¶ 5.  On December 17, 2019, the Director, Field Operations, Boston Field Office upheld the expedited removal order and removed reference to the INA § 212(a)(6)(C)(i) charge that had been included therein.  D. 29 ¶ 6; D. 35 ¶ 6.  On November 8, 2019, Moradi filed a FOIA request, using CBP's online FOIA portal, requesting:

1. all records relating to his entries into the United States on or about April 28, 2019; August 17, 2019; and September 17, 2019;

2. all records—whether written, electronic, or digitally recorded via audio or videotape— relating to the October 6, 2019 questioning and expedited removal of him at CBP Logan Airport;

3. any and all records relating to the investigation of him; including, but not limited to, materials relied upon in determination to revoke his visa and order expedited removal.

D. 29 ¶ 7; D. 35 ¶ 7; see D. 30 ¶ 13.

On November 21, 2019, CBP acknowledged receipt of the FOIA request and informed Moradi that the average time to process a request related to "travel/border incidents" was three to six months.  D. 29 ¶ 9; D. 35 ¶ 9.  Moradi filed suit in this Court on February 3, 2020.  D. 1.  On March 24, 2020, CBP produced thirty pages of responsive records.  D. 29 ¶ 10; D. 35 ¶ 10.  Two days later, on March 26, 2020, Moradi submitted a supplemental FOIA request.  D. 29 ¶ 11; D. 35 ¶ 11.  Moradi's second request sought "all" "records," but did not contain a definition section or define the term "record."  D. 29 ¶ 12; D. 35 ¶ 12.  On May 8, 2020, CBP released thirty-nine pages of records to Moradi in response to his second FOIA request.  D. 29 ¶ 13; D. 35 ¶ 13.

On December 2, 2020, a week prior to the summary judgment hearing, CBP sent Moradi 184 pages of email communications, as well as documents Moradi had submitted to CBP.  D. 39 at 1-2; D. 39-1 at 3.  With this third production, CBP included a letter describing the scope of the email search.  D. 39 at 2; D. 39-1.  The letter explained that CBP's Office of Information Technology "conducted four different email searches related to the events referenced" in the request, with date ranges spanning two days before and two days after each entry for the first three searches, D. 39-1 at 2, and spanning from two days before Moradi's arrival in the U.S. to two days after issuance of the decision to uphold the order for the fourth search.  Id.  CBP emailed Moradi a second Vaughn index with the third release of documents.  D. 39-2.

IV.    **Procedural History**

Moradi instituted this action on February 3, 2020.  D. 1.  Defendants now have moved for summary judgment.  D. 28.  Moradi filed a cross-motion for summary judgment on October 19, 2020.  D. 33.  The Court heard the parties on the pending motions and took these matters under advisement.  D. 43.  After the hearing, the Defendants filed a supplemental declaration, D. 44, that Moradi now moves to strike.  D. 45.

V.    **Discussion**

A.    **Motion to Strike**

CBP's motion for summary judgment relies upon a government affidavit from Patrick Howard ("Howard"), Branch Chief within the FOIA Division (the "Division") at CBP.  D. 30 (the "Howard Affidavit.").  Howard "oversee[s] a staff of Government Information Specialists, the processing of requests for records submitted to CBP pursuant to FOIA . . . and other activities conducted pursuant to applicable records access provisions."  Id. ¶ 1.  On January 8, 2021, Defendants filed a supplemental affidavit from Howard, naming two databases searched by CBP

when fulfilling Moradi's FOIA request—the Analytical Framework for Intelligence ("AFI") and E3 Next Gen system—and explaining how the databases function.  D. 44 (the "Supplemental Howard Affidavit").  Defendants' original affidavit did not include the names of any databases. See D. 30.  Moradi argues Defendants' latest filing has "effectively conceded that [Defendants] were required to state more about their searches . . ."  D. 45 at 2 n. 2.  He furthers that the filing was made nearly a month after the summary judgment hearing conducted on December 10, 2020, thereby rendering the filing untimely, id. ¶ 5, and that the naming of these two databases "contravenes Defendants' persistent argumentation . . . that they had no obligation to disclose anything about the searched databases beyond labeling them 'appropriate,'" id. ¶ 6.  Defendants counter that during the December 10, 2020 hearing, this Court noted for "the government's consideration" the existence of cases in which CBP databases were identified in FOIA affidavits. D. 46 at 2.  Defendants also note that Moradi's counsel, during the December hearing, mentioned that she had received CBP FOIA responses with named databases and that "[t]here's definitely somewhere in the middle or close to my position that CBP could accommodate."  Id. at 3. Defendants contend that their counsel conferred with Defendants post-hearing and that Defendants then agreed to release the identities of the databases that CBP searched in Howard's supplemental declaration.  Id.

Moradi is correct that Defendants filed this supplemental affidavit on January 8, 2021, D. 44, after both Moradi's reply brief and the summary judgment hearing.  Although Defendants did not seek leave for this filing, it was responsive to issues that were raised (in part, by the Court) at the summary judgment hearing.  Moreover, filing of the supplemental affidavit does not prejudice Moradi, as it provides additional information as to the adequacy of Defendants' search and the Court has considered arguments raised by Moradi in the motion in considering and reviewing the

affidavit in connection with Defendants' motion for summary judgment.  Accordingly, the Court DENIES the motion to strike.  McMahon v. Digital Equip. Corp., 162 F.3d 28, 34 n. 6 (1st Cir. 1998) (citing E.E.O.C. v. Green, 76 F.3d 19, 24 (1st Cir. 1996)) (noting that a district court's decision not to strike a supplemental affidavit is a matter of discretion).

**B.     Adequacy of the Search**

Moradi contends CBP did not conduct an adequate search for responsive documents.  See generally, D. 1.  The adequacy of an agency's search for documents under FOIA "is judged by a standard of reasonableness and depends upon the facts of each case."  Maynard v. C.I.A., 986 F.2d 547, 559 (1st Cir. 1993).  "The crucial issue is not whether relevant documents might exist, but whether the agency's search was 'reasonably calculated to discover the requested documents.'" Id. (quoting Safecard Servs., Inc. v. S.E.C., 926 F.2d 1197, 1201 (D.C. Cir. 1991)).  "A satisfactory agency affidavit should, at a minimum, describe in reasonable detail the scope and method by which the search was conducted," id., and should additionally "describe at least generally the structure of the agency's file system which makes further search difficult," id. (internal quotation marks omitted) (quoting Church of Scientology of Cal. v. I.R.S., 792 F.2d 146, 151 (D.C. Cir. 1986)).  "A reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched, is necessary to afford a FOIA requester an opportunity to challenge the adequacy of the search and to allow the district court to determine if the search was adequate in order to grant summary judgment."  Oglesby v. U.S. Dep't of Army, 920 F.2d 57, 68 (D.C. Cir. 1990). Once an agency has produced a sufficient affidavit, a court must afford the government a presumption of good faith, and "the burden shifts to the requester to 'provide countervailing evidence as to the adequacy of the agency's search.'"

<u>Oleskey ex rel. Boumediene v. U.S. Dep't of Def.</u>, 658 F. Supp. 2d 288, 294-95 (D. Mass. 2009) (quoting <u>Iturralde v. Comptroller of Currency</u>, 315 F.3d 311, 313-14 (D.C. Cir. 2003)).  If the requester introduces evidence that "raises substantial doubt, particularly in view of well defined requests and positive indications of overlooked materials, summary judgment is inappropriate." <u>Id.</u> (internal quotation marks omitted) (quoting <u>Iturralde</u>, 315 F.3d at 314).

CBP relies upon the government affidavit from Howard in its motion for summary judgment, D. 30, which has since been complemented by a supplemental Howard affidavit, D. 44. The original affidavit, D. 30, explains the FOIA Division's processes, stating that the Division determines which CBP offices and databases are likely to contain responsive records based on "a review of the content of the request, the nature of the records sought, the FOIA Division's familiarity with the types and locations of the records at issue, and discussions with knowledgeable Agency personnel." <u>Id.</u> ¶ 22.  The affidavit further states that the Division then searched CBP databases and/or requested relevant CBP offices "to gather any/all potentially responsive records," after which the Division "review[ed] all gathered records for responsiveness, redact[ed] the documents as appropriate, review[ed] redaction marks, and obtain[ed] final authorization for release prior to production." <u>Id.</u>  Pursuant to this process, the affidavit explains that after receiving Moradi's November 2019 request, the Division "searched and retrieved responsive records from the appropriate CBP databases" and "referred the request to the Boston Field Office to conduct a search for potentially responsive records related to the October 6, 2019 questioning and expedited removal . . ." <u>Id.</u> ¶ 24.  The affidavit notes that the Division did not request CBP's Office conduct an email search, as the FOIA request "did not contain a definition section or define the term 'record' to include email or electronic communications, nor did it include specific search terms to indicate that a search of email or electronic communications was necessary to respond to the

8

request." Id. ¶ 25.  The affidavit asserts that requesters "usually specify as such clearly in the request." Id.  When Moradi submitted a supplemental request on March 26, 2020, the Division again referred the request to the Boston Field Office with no request made for emails.  Id. ¶ 26. The supplemental affidavit, as noted above, provides the names of two of the databases searched by CBP.  D. 44 at 1.

Once an agency has produced a sufficient affidavit, Oleskey, 658 F. Supp. 2d at 294-95, the government is accorded a presumption of good faith that "cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'"  Maynard, 986 F.2d at 560 (citing SafeCard Servs., Inc., 926 F.2d at 1200);  see Weisberg v. U.S. Dep't of Justice, 705 F.2d 1344, 1351 (D.C. Cir. 1983) (noting that to prevail on summary judgment, "the agency must show beyond material doubt . . . that it has conducted a search reasonably calculated to uncover all relevant documents").  Here, the Howard affidavit describes the steps taken by the Division to process Moradi's FOIA request, having searched its own databases for responsive records and referred the request to the Boston Field Office for other responsive records related to the October 6, 2019 questioning and expedited removal.  D. 30 ¶¶ 22-24.  The supplemental affidavit specifies the two databases CBP searched—AFI and E3 NextGen— and the types of information obtained from each.  D. 44 1-2.  The supplemental affidavit states that the AFI system "consolidates and enhances information from CBP transaction based systems," while the E3 NextGen system "collects and transmits biographic, encounter, and biometric data for the identification and verification of individuals encountered at the border and checkpoints . . ." Id. at 1-2.

A defendant agency must establish that it has "made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the

information requested." Oleskey, 658 F. Supp. 2d at 294 (quoting Oglesby, 920 F.2d at 68). The Howard affidavits adequately delineate which databases were searched and by whom, D. 30; D. 44, but fails to answer the question of how these searches were conducted to ensure all responsive documents were pulled, i.e., which search terms were used when conducting the database searches. See Weisberg, 705 F. 2d at 1348 (noting that agency affidavits that "do not denote which files were searched or by whom, do not reflect any systematic approach to document location, and do not provide information specific enough to enable [the FOIA requester] to challenge the procedures utilized" are insufficient to support summary judgment (quoting Weisberg v. U.S. Dep't of Just., 627 F.2d 365, 371 (D.C. Cir. 1980))). Although the CBP's December 2, 2020 letter provided such details for their subsequent searches for emails, the Howard affidavits did not provide such details as to those searches or those of the earlier database searches. Compare D. 39-1 at 2 with D. 30 at 6-8. "A reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched, is necessary to afford a FOIA requester an opportunity to challenge the adequacy of the search and to allow the district court to determine if the search was adequate in order to grant summary judgment." Oglesby, 920 F.2d at 68; Perry v. Block, 684 F.2d 121, 127 (D.C. Cir. 1982) (noting that "affidavits that explain in reasonable detail the scope and method of the search conducted by the agency will suffice to demonstrate compliance with the obligations imposed by the FOIA" in the absence of countervailing evidence or inconsistency of proof). Accordingly, although the Howard affidavits sufficiently indicate what was searched and by whom, additional details regarding which search terms were utilized to conduct the searches and define the scope of the search are necessary for Defendants to meet their burden. Oglesby, 920

F.2d at 68.  In this regard, Defendants have until **April 22, 2021** to supplement with an affidavit to address this issue.

### C.    Application of the FOIA Exemptions

"Within FOIA, 'Congress provided a number of exemptions that permit an agency to withhold certain documents from release.'" Johnson v. Cent. Intelligence Agency, 330 F. Supp. 3d 628, 644 (D. Mass. 2018) (quoting Stalcup, 768 F.3d at 69).  "To fulfill the broad purposes of FOIA, [the Court] construe[s] these exemptions narrowly." Id.  The exemptions asserted by CBP as grounds for non-disclosure of portions of the documents being challenged by Moradi are FOIA Exemptions 5, 6, 7(C) and 7(E), which are codified at 5 U.S.C. §§ 552 (b)(5), (b)(6), (b)(7)(C), and (b)(7)(E).  D. 30 ¶ 28.  CBP asserts FOIA Exemption 5 to protect against the disclosure of its deliberative process, 5 U.S.C. § 552(b)(5), Exemptions 6 and 7(C) to protect against unwarranted invasions of privacy, 5 U.S.C. § 552(b)(6) and 5 U.S.C. § 552(b)(7)(C), and Exemption 7(E) to protect against the disclosure of investigative techniques and procedures, 5 U.S.C. § 552(b)(7)(E).  CBP bears the burden of proving that any claimed exemption applies.  Johnson, 330 F. Supp. 3d at 644.  This burden is "a light one," as "an agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible." Katsiaficas v. CIA, No. 13-cv-11058-ADB, 2017 WL 2172437, at *5 (D. Mass. May 17, 2017) (internal quotation marks omitted) (quoting N.Y. Times Co. v. U.S. Dep't of Just., No. 14-CV-03776 (AT)(SN), 2016 WL 5946711, at *5 (S.D.N.Y. Aug. 18, 2016)).

#### 1.    Exemption 5

The Court first considers whether FOIA Exemption 5's deliberative process privilege applies to CBP's referenced redactions.  "Under 5 U.S.C. § 552(b)(5), 'inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency

in litigation with the agency' are exempted from disclosure." Am. Civil Liberties Union of Massachusetts, Inc., 448 F. Supp. 3d at 37 (quoting 5 U.S.C. § 552(b)(5)).  The First Circuit has held that Exemption 5 "facilitates government decision making by:  (1) assuring subordinates will feel free to provide uninhibited opinions, (2) protecting against premature disclosure of proposed government policies, and (3) preventing confusion among the public that may result from releasing various rationales for agency action."  Id. (quoting New Hampshire Right to Life v. U.S. Dep't of Health & Human Servs., 778 F.3d 43, 52 (1st Cir. 2015)).

To claim the deliberative process privilege pursuant to Exemption 5, "[t]he government carries the burden of establishing the applicability of the exemption and must show:  (1) that the withheld material is an inter- or intra- agency memorandum . . . (2) that the document is deliberative; and (3) that it is predecisional."  Stalcup, 768 F.3d at 70 (citing Providence Journal Co. v. U.S. Dep't of Army, 981 F.2d 552, 557 (1st Cir. 1992).  To satisfy the 'deliberative' element, a document "must reflect 'the give-and-take of the consultative process.'"  Id. (quoting Petroleum Info. Corp. v. U.S. Dep't of Interior, 976 F.2d 1429, 1434 (D.C. Cir. 1992).  "A predecisional document will qualify as 'deliberative' provided it (i) formed an essential link in a specified consultative process, (ii) 'reflect[s] the personal opinions of the writer rather than the policy of the agency,' and (iii) if released, would 'inaccurately reflect or prematurely disclose the views of the agency.'"  Providence Journal, 981 F.2d at 559 (quoting Nat'l Wildlife Fed'n v. U.S. Forest Serv., 861 F.2d 1114, 1118-19 (9th Cir. 1988)).

Turning first to CBP's application of Exemption 5 in the first and second production, CBP relies upon Exemption 5's deliberative process privilege as the basis that the statements redacted thereunder reflected internal agency deliberations pertaining to potential enforcement actions.  D. 29 ¶ 19.  The exemption was applied to portions of two pages of records released to Moradi, id.,

which CBP argues, if released, "could reasonably be expected to have a chilling effect on the open and frank expression of ideas, recommendations and opinions that occurs when Agency officials are discussing and crafting guidance on a time-sensitive issue." D. 30 ¶ 31. CBP has proffered no explanation, however, that any of these statements were deliberative. To the extent CBP has explained its basis for invoking Exemption 5 to redact these documents, the agency has merely relied upon conclusory statements averring that exemption "has been applied to recommendations reflecting internal agency deliberations pertaining to potential enforcement actions." D. 30-1 at 10. CBP has not demonstrated that the redacted portions "form[ed] an essential link in a specified consultative process," Providence Journal Co., 981 F.2d at 559, as there is no evidence that the redacted text played any part in a deliberative function entrusted to the agency. Although Exemption 5 disputes "can often be resolved by the simple test that factual material must be disclosed but advice and recommendations may be withheld," Reilly v. U.S. E.P.A., 429 F. Supp. 2d 335, 345 (D. Mass. 2006) (noting that the "fact/opinion distinction 'offers a quick, clear, and predictable rule of decision,' for most cases"), there is nothing in the record—aside from conclusory statements in CBP's Vaughn Index and affidavit—that shows the redacted portions contain the personal opinions of the "SCBPO" writer who drafted the document. D. 30-1. The Court is unable to discern any indication of advice or recommendation based on the context surrounding these redacted portions. See, e.g., D. 36-12 (redacting sentence starting "[r]egarding the request to vacate the expedited removal order of [Moradi] entered October 6, 2019. . . .").

CBP additionally failed to meet its burden to demonstrate that the redacted portions, if released, would inaccurately reflect or prematurely disclose the views of the agency. While CBP asserts the redacted portions meet Exemption 5 requirements, without more, CBP has not met its burden of proving the applicability of Exemption 5 to the redacted portions of the document. D.

36-12 at 2-3.   See Am. Civil Liberties Union of Massachusetts, Inc., 448 F. Supp. 3d at 37 (concluding agency was "unable to meet its burden to demonstrate that Exemption 5 shields the release of any of the [documents] because it has not provided any evidence, as it must, that those documents are 'deliberative'"); Johnson, 330 F. Supp. 3d at 633 (noting that the court "must reject the Agency's withholdings if 'the declarations do not demonstrate careful analysis of each document by the government; the court has not been assisted in its duty of ruling on the applicability of an exemption; and the adversary system has not been visibly strengthened'") (internal quotation marks and citation omitted.

Turning to CBP's use of Exemption 5 in its third production, D. 39, CBP similarly fails to demonstrate how these documents are deliberative.  In the second Vaughn index, Defendants state that the two documents withheld from the production, both titled "Document withheld in full from 5/8/2020 production," "contain[ ] guidance and instructions related to potential Agency action," D. 39-2 at 39-40; id. at 41, and therefore, "do not constitute a final Agency policy or decision and are protected from disclosure . . . as part of the deliberative process."  D. 39-2 at 39-40; id. at 41 (solely noting withheld document does "not constitute a final Agency decision").   These explanations do not demonstrate a "careful analysis of each document by the government," Johnson, 330 F. Supp. 3d at 633, or show "an essential link in a specified consultative process," Providence Journal Co., 981 F. 2d at 559.

Where, as here, a court finds that a Vaughn index or agency affidavit inadequately describes records redacted or withheld under the deliberative process privilege, it may deny summary judgment as to those records and "direct the government to revise its submissions with respect to [the] specific records."   Church of Scientology Int'l., 30 F.3d at 239; Spirko v. U.S. Postal Serv., 147 F.3d 992, 997 (D.C. Cir. 1998) (citations omitted) (explaining that "[i]f the

agency fails to provide a sufficiently detailed explanation to enable the district court to make a de novo determination of the agency's claims of exemption," the district court then may request further affidavits).   Accordingly, as with the adequacy of the search, the Court gives the government until **April 22, 2021** to supplement its Vaughn index as to the documents redacted or withheld solely on the basis of deliberative process under Exemption 5, D. 30-1 at 10 (listing "Memo to DFO from SCBPO_Redacted" as withheld under Exemption 5); D. 36-12, or produce these documents.

2.     *Exemptions 6 and 7(C)*

Exemptions 6 and 7(C) seek to protect the privacy of individuals identified in certain agency records.   Under Exemption 6, "personnel and medical files and similar files" may be withheld if disclosure "would constitute a clearly unwarranted invasion of personal privacy."   5 U.S.C. § 552(b)(6).   Whether names and other identifying information are appropriately withheld under Exemption 6 is a two-part analysis.   Johnson, 330 F. Supp. 3d at 647 (quoting Families for Freedom v. U.S. Customs & Border Protection, 837 F. Supp. 2d 287, 301 (S.D.N.Y. 2011)).   "First, [the Court] must determine whether the personal information is contained in a file similar to a medical or personnel file."   Id.   Then, the Court must "balance the public's need for the information against the individual's privacy interest to determine whether the disclosure of the names would constitute a clearly unwarranted invasion of personal privacy."   Id. (quoting Wood v. FBI, 432 F.3d 78, 86 (2d Cir. 2005)).   "[T]he Government's burden in establishing the requisite invasion of privacy to support an Exemption 6 claim is heavier than the standard applicable to Exemption 7(C)."   U.S. Dep't of State v. Ray, 502 U.S. 164, 172 (1991).   Exemption 7(C) "permits an agency to withhold records or information compiled for law enforcement purposes, 'but only to the extent that the production of such [materials] . . . could reasonably be expected to constitute an

unwarranted invasion of personal privacy." <u>Carpenter v. U.S. Dep't of Justice</u>, 470 F.3d 434, 438 (1st Cir. 2006) (quoting 5 U.S.C. § 552 (b)(7)(C)).  "The application of Exemption 7(C) requires the court to balance the privacy interest at stake in revealing the materials with the public interest in their release."  <u>Id.</u>  Given that Exemption 7(C) "protects similar interests and shields a broader range of information," than Exemption 6, "all information that would fall within the scope of Exemption 6 would also be immune from disclosure under Exemption 7(C)." <u>Moffat v. U.S. Dep't of Justice</u>, 716 F.3d 244, 250 n. 4 (1st Cir. 2013) (citing <u>Roth v. U.S. Dep't of Justice</u>, 642 F.3d 1161, 1173 (D.C. Cir. 2011)).

Turning to CBP's first and second production, CBP applies Exemption 6, asserting that the exemption has "been applied to the names, personally identifiable information and other identifying details of government employees and third party individuals that, if released, would identify those individuals."  D. 30-1 at 2-6, 8-14.  Moradi does not object to CBP's application of Exemption 6 or 7(C) with respect to the officers' names, but rather to the officers' titles.  D. 34 at 11.  While CBP asserts that it did not apply these exemptions categorically, having "released names of senior officials whose identities are widely known among the public," D. 30 ¶ 35, Exemption 6 can only be invoked for documents similar to personnel or medical files, <u>see</u> <u>Johnson</u>, 330 F. Supp. 3d at 647; <u>Families for Freedom</u>, 837 F. Supp. 2d at 301.  CBP applies the exemption to such documents as Moradi's 'Record of Deportable/Inadmissible Alien,' D. 36-1 at 2-7, D. 36-18, Moradi's 1025 and 1095 documents, D. 36-3 at 2-15, Moradi's Person Query form, D. 36-5, D. 36-6, D. 36-7, D. 36-10, D. 36-15, Moradi's Withdrawal of Application for Admission/Consular Notification, D. 36-11; Notice to Detain, Remove or Present Alien, D. 36-14; Moradi's Notice and Order of Expedited Removal, D. 36-17, as well as other documents, D. 36-9, D. 36-12.  As these files are not personnel or medical files, their assessment would fall under the gambit of "similar

files," which is "meant to 'have a broad, rather than a narrow meaning.'" <u>Johnson</u>, 330 F. Supp. 3d at 647 (quoting <u>U.S. Dep't of State v. Washington Post Co.</u>, 456 U.S. 595, 600-02 (1982) (noting Exemption 6 was "intended to cover detailed Government records on an individual which can be identified as applying to that individual")).  Applying a broad meaning, these files appear "similar" to personnel or medical files, as other courts have held analogous documents to be, <u>Families for Freedom</u>, 837 F. Supp. 2d at 301 & n. 83 (noting that "similar files" has been construed to include "those containing investigations of alleged corruption, passport applications, asylum requests or detainee abuse").   CBP applies Exemption 6 to redact who generated, signed or modified these documents.  <u>See, e.g.</u>, D. 36-9 at 2, 3, 8.  Given the government's greater burden under Exemption 6 to establish the requisite invasion of privacy of the disclosure of same, it is a close call whether documents redacted in this manner solely under Exemption 6 would stand. Here, however, the government invokes both Exemptions 6 and 7(C) for such redactions and, as discussed below, the Court concludes that such redactions were appropriate under Exemption 7(C).

Turning to CBP's application of Exemption 7(C), under which "all information that would fall within the scope of Exemption 6 would also be immune from disclosure," <u>Moffat</u>, 716 F.3d at 250, n. 4, CBP applies Exemption 7(C) to the same or similar information, "in tandem" with Exemption 6, "such that information protected by one [exemption] is also protected by the other," D. 29 ¶ 20.  "Although 'the Government's burden in establishing the requisite invasion of privacy to support an Exemption 6 claim is heavier than the standard applicable to Exemption 7(C),'" the public interest prong of both exemptions applies equally in both contexts.  <u>Maynard</u>, 986 F.2d at 567 (quoting <u>Ray</u>, 502 U.S. at 172).  Under Exemption 7(C), "'records or information compiled for law enforcement purposes' may be withheld 'to the extent that' disclosure 'could reasonably be expected to constitute an unwarranted invasion of personal privacy.'"  <u>Abdul-Alim v. Wray</u>,

277 F. Supp. 3d 199, 216 (D. Mass. 2017) (quoting <u>Taylor v. U.S. Dep't of Justice</u>, 257 F. Supp. 2d 101, 113 (D.D.C. 2003)).  "In determining whether a privacy interest exists in records related to law-enforcement agencies, it is well established that the mention of an individual's name in a law enforcement file will engender comment and speculation and carries a stigmatizing connotation."  <u>Id.</u>  "[T]he public's interest in disclosure is not furthered . . . by disclosure of information about individuals that is accumulated in . . . governmental files but that reveals little or nothing about an agency's own conduct."  <u>Id.</u>

CBP argues "the identification of CBP officials in association with the performance of their duties in an operational context risks unwarranted attribution and attention to the employee beyond the confines of their job and into their personal life, and disclosing the identities of these specific individuals would not meaningfully shed light on how the government performs its duties."  D. 30 ¶ 36.  While CBP does not reference its redaction of officials' titles specifically, CBP reference its redaction of personally identifiable information generally.  <u>Id.</u>  "Official information that sheds light on an agency's performance of its statutory duties falls squarely within the statutory purpose," of FOIA.  <u>Ray</u>, 502 U.S. at 177-78.  Here, however, Moradi has failed to indicate or point to how this withheld information would reveal anything significant about CBP's "performance of its statutory duties," or any other superior public interest.  <u>Maynard</u>, 986 F.2d at 566 (concluding officials names were properly withheld where plaintiffs failed to "suggest how the disclosure of the names would reveal what the government is up to").

Turning to CBP's third production, CBP similarly applies Exemption 7(C) to redact officers' names and titles.  D. 39-2.  Moradi argues that the emails indicate the redacted names are of low-level employees rather than supervisors or policymakers.  D. 42 at 2 (citing email that states "[e]xcellent work by our [redacted] Officers," which Moradi argues "reflects that the author and

the recipient are senior").  Like its arguments for CBP's first and second production, CBP contends

in the second Vaughn index that these portions, if unredacted, "would identify" these individuals

who "have a protectable privacy interest in their identities that would be threatened by disclosure."

See generally, D. 39-2.  Although CBP's explanations are arguably broad, Moradi fails to explain

how it is in the public interest to reveal these officers' identities.  D. 42 at 2.  Moradi argues

generally that the public has a significant interest in being informed about actions taken by public

officials but provides no further basis.  Id.  Courts have consistently held that "where the plaintiff

has failed to demonstrate any superior public interest that would be served by disclosure, the

competing interest of avoiding an unwarranted invasion of personal privacy takes precedence, and

the information is exempt from disclosure under Exemption 7(C)."  Crooker, 1995 WL 783236, at

*17.  Accordingly, here, the officers' rights to privacy and safety outweigh any public interest

given Moradi's failure to demonstrate how the revelation of this kind of information would shed

light on the operations and activities of CBP.  The Court concludes that the officials' names and

identities were properly withheld under Exemption 7(C) and CBP's motion for summary judgment

with respect to Exemption 7(C) is allowed.

### 3.  Exemption 7(E)

Exemption 7(E) "shields law enforcement records that, if produced, 'would disclose

techniques and procedures for law enforcement investigations or prosecutions, or would disclose

guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably

be expected to risk circumvention of the law.'"  Abdul-Alim, 277 F. Supp. 3d at 215.  To withhold

documents pursuant to Exemption 7(E), "the [agency] need only 'establish a rational nexus

between the investigation and one of the agency's law enforcement duties and a connection

between an individual or incident and a possible security risk or violation of federal law.'"

Blackwell v. FBI, 646 F.3d 37, 40 (D.C. Cir. 2011) (quoting Campbell v. Dep't of Justice, 164 F.3d 20, 32 (D.C. Cir. 1998)).

CBP invoked Exemption 7(E) to withhold:  (1) internal codes, case tracking numbers and names of databases and (2) law enforcement techniques, procedures and methods and information compiled for law enforcement and investigative purposes.  D. 30 ¶ 40; see D. 39-2.  In the Howard affidavit, Howard explains that CBP "is constrained in describing the techniques, procedures, and guidelines by its Exemption (b)(7)(E) withholdings, so as to avoid revealing information CBP seeks to protect, which is not generally known to the public."  D. 30 ¶ 38.  He asserts that the "records at issue were compiled for law enforcement purposes," id. ¶ 39, and that the disclosure of the internal codes and case tracking numbers therein would "enable an individual knowledgeable in CBP databases to improperly access the system, facilitate navigation or movement through the system, allow manipulation or deletion of data and/or interfere with enforcement proceedings," id. ¶ 40(i).  He also purports that the disclosure of law enforcement techniques, procedures and methods and information compiled for law enforcement and investigation purposes would "be detrimental to both CBP and the law enforcement community, and enable individuals to alter patterns of conduct, adopt new methods of operation, relocate, change associations, and effectuate other countermeasures, thereby corrupting the integrity of ongoing investigations."  Id. ¶ 40(ii).  These justifications are reflected in the Vaughn indices, in which a similar rationale is repeated throughout.  See generally, D. 30-1; D. 39-2.

Based upon information in the Vaughn indices for withholding documents under Exemption 7(E)--that this exemption "has been applied to internal codes, case tracking numbers, and the names of databases which the Agency considers law enforcement sensitive" and "information relating to law enforcement techniques, procedures and methods, and information

compiled for law enforcement and investigation purposes," D. 30-1 (repeated throughout); D. 39-2 (repeated throughout)—in conjunction with the explanations provided in the Howard affidavit as to the exemption, the Court concludes that Defendants have provided sufficient details from which the Court can find that "a rationale nexus" exists "between law enforcement methods/investigations and potential [ ] security risks if the redacted information were disclosed." Abdul-Alim, 277 F. Supp. 3d at 215 (permitting FBI's use of Exemption 7(E) despite agency's "conclusory allegations" given details provided in declaration "as a whole").  Accordingly, the Court allows Defendant's motion for summary judgment as to its application of Exemption 7(E).

## VI.    Conclusion

For the foregoing reasons, the Court DENIES Moradi's motion to strike, D. 45, ALLOWS in part and DENIES in part Defendants' motion for summary judgment without prejudice, D. 28, and DENIES Moradi's cross-motion for summary judgment without prejudice, D. 33.  Defendants shall submit a supplemental affidavit as to adequacy of search, particularly addressing the search terms utilized to conduct these searches and the scope of searches, **by April 22, 2021.** Also, by **April 22, 2021,** Defendants shall supplement their Vaughn index as to the documents redacted or withheld solely on the basis of deliberative process under Exemption 5, D. 30-1 at 10 (listing "Memo to DFO from SCBPO_Redacted" as withheld under Exemption 5); D. 36-12, or produce these documents by **April 22, 2021**, providing notice of same to the Court.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge